## In re PROUTY.

*(Circuit Court, S. D. New York. July 10, 1885.)*

1. BANKRUPTCY—JURISDICTION OF CIRCUIT COURT—ORDER REMOVING ASSIGNEE.
   The superintendence and jurisdiction of the circuit court conferred by Rev. St. § 4986, are revisory of cases and questions arising in the district court, and contemplate a review of what is presented to that court for consideration and decision ; and if an order of the district court, removing an assignee, was right when made, it cannot be reversed.

2. SAME—ASSIGNEE REMOVED.
   On examination of the circumstances of this case, *held*, that the assignee was properly removed by the district court on account of his dilatory and unwise course, and that the order should be affirmed.

Petition for Review.

*W. F. Scott*, for respondent.

*Robert Sewell*, for appellant.

WALLACE, J. By an order of the district court, made on the twenty-seventh day of December, 1884, the assignee of the bankrupt was removed upon the petition of certain creditors of the estate. The case has been brought here by the assignee upon a petition of review, seeking a reversal of that order. The argument of counsel for the assignee has largely been addressed to the point that some of the creditors, upon whose petition the proceeding was put in motion, did not have the requisite standing in the court below to entitle them to move; one of them being a secured creditor, who had proved without relinquishing his security, and another being a creditor who had been divested of his claim by a transfer after he had proved his debt. It is conceded, however, that Schermerhorn and Cox were creditors whose debts were proved, and who were in a position to move, at the time they joined in the petition, for the removal of the assignee. It is represented, however, that since the case has been brought here for review they have withdrawn from the proceedings. Inasmuch as they were competent parties to the proceeding when the order of the district court was made, all objections which rest upon the ground that there were no competent adverse parties to the proceedings to authorize the removal of the assignee, are unavailing.

The superintendence and jurisdiction of this court conferred by section 4986 are revisory of cases and questions arising in the district court, and contemplate a review of what is presented to that court for consideration and decision. *Re Bininger*, 7 Blatchf. 159, 164. If the order was right when it was made, it cannot be reversed now. For this reason it is not deemed necessary to consider whether the court of its own motion did not have ample power to remove the assignee, if, upon facts brought to its notice, it seemed proper that he be removed, or whether it was not the duty of the court to do so, although no creditor asked for such action. The order was made upon the petition of creditors, and the answer of the assignee, without proofs in support of the petition or answer, except such exhibits as were made part of the record. Without attempting an extended review of the facts as they appear by the petition and the answer, it is sufficient to refer to one transaction, in respect to which the inferences are so clear as abundantly to justify the order of the district court.

In July, 1883, the assignee was in a position to realize over $20,000 in cash for the estate upon an adjustment with Mr. Sage, by which the latter proposed to take certain securities of the bankrupt in his hands at their fair value, and pay over the amount after deducting certain liens upon it. Mr. Sage's proposition was to allow $67,760 for the securities, deduct his own claim at $27,000, retain $20,000 to satisfy a lien claimed upon the securities by Messrs. Birdseye, Cloyde & Bayliss, and pay the balance, $20,760, to the assignee in cash. The lien claimed by Messrs. Birdseye, Cloyde & Bayliss was for legal services as attorneys for the bankrupt, and its validity

was disputed by the assignee. If the price offered for the securities by Mr. Sage was a fair one, the clear duty of the assignee was to apply to the court for an order authorizing him to accept it, and making provision for the alleged lien of Messrs. Birdseye, Cloyde & Bayliss. Recognizing this, the assignee petitioned the court for such an order. He represented in his petition that the bankrupt's estate was greatly involved; that it had many thousand acres of unproductive land, largely incumbered by taxes, tax titles, and adverse claims; and that he, as assignee, had no money, or means to realize money, with which to protect in any manner the interests of the estate. He further represented that the proposed settlement would supply him with ready money with which to protect the interests of the estate; that unless he could be so supplied the estate would suffer immense loss; and that there was no other source from. which money could be obtained.

The court referred the petition to a referee to take proofs and report, and on the twenty-fourth of July, 1883, the referee reported, substantially recommending the settlement proposed. In his report the referee stated that the assignee was in urgent need of funds to enable him to protect the interests of the estate; that the price offered for the securities by Mr. Sage was the highest the assignee could procure, after diligent effort; and that it was both advisable and necessary that the securities be sold, and the proceeds, after satisfying the lien, be paid to the assignee, for the use and benefit of the estate. He recommended an order that the assignee be authorized to sell the securities at a specified sum, at public auction, at the Exchange salesroom, in the city of New York, and that in default of a bid for that amount he accept the offer of Mr. Sage; and that out of the proceeds the lien of Mr. Sage be paid, and $20,000 be deposited in the registry of the court, to await the determination of the validity of the claims of Messrs. Birdseye, Cloyde & Bayliss.

It appears by this report that Mr. Sage consented to such a sale. The confirmation of such a report would seem to have been almost a matter of course, if the assignee had applied for it. He attempts to excuse his neglect by the statement that exceptions were filed by Messrs. Birdseye, Cloyde & Bayliss, and by another creditor whose name he does not give, and says: "He had reason to believe that before a sale could be effected considerable time, labor, and expense might have to be incurred by him." He does not state what grounds were assigned by the parties opposing a confirmation, or that he believed there were any tenable objections, or that he had any doubt of a favorable issue. In view of his urgent need of funds it is remarkable that he should lie by supinely and let this favorable opportunity slip. His conduct cannot be vindicated by such loose and meager reasons as he assigns for not attempting to obtain a confirmation of the order. If it were intimated that he contemplated some more expedient sale of the securities, or a different adjustment of the liens

claimed upon them, this might suggest a satisfactory explanation of his conduct; but his subsequent action in regard to the securities is utterly inconsistent with any such theory. In September, 1883, he entered into a stipulation with Messrs. Birdseye, Cloyde & Bayliss, authorizing them to pay to Mr. Sage the amount of his lien as claimed by him, and authorizing Mr. Sage to transfer the securities to Messrs. Birdseye, Cloyde & Bayliss, together with his lien upon them, and authorizing Messrs. Birdseye, Cloyde & Bayliss to hold and retain the securities until the amount of their own lien should be determined. He consented to an entry of an order by the court, upon the application of Messrs. Birdseye, Cloyde & Bayliss, carrying out the terms of this stipulation.

The result of this action upon his part was to transfer the securities to creditors whose lien upon them was contested, and to put it beyond his power to realize anything from them for an indefinite period of time. From that time until the order for the removal of the assignee was made, the securities remained in the hands of Messrs. Birdseye, Cloyde & Bayliss, and the litigation over the validity of their claim had been dragging its weary length along with no prospect of a speedy conclusion. There is no aspect of this transaction which suggests a theory that is consistent with the exercise of a proper discretion on the part of the assignee. There had been no change in the pressing necessities of the estate, and the assignee, in his answer, attempted to explain his failure to realize anything from the large amount of real estate which came to his possession, by the allegation that he has been without funds to clear off the liens and adjust questions affecting the title, and therefore had been unable to sell it. Seven years have elapsed since he was appointed assignee, and although a very large amount of assets came to his possession, nothing has been realized of consequence. Without impugning the intentions of the assignee to administer his trust honestly, and with reasonable diligence, it suffices to say that the creditors had just cause to be dissatisfied with the dilatory and unwise course he has pursued, and that the court below had sufficient grounds to consider his removal imperative in the interests of a prudent and energetic management of the estate.